[No. 58870-8.   En Banc.   August 26, 1993.]

THE SCOTT FETZER COMPANY, KIRBY COMPANY DIVISION,
*Appellant*, v. CAROL J. WEEKS, ET AL, *Defendants*,
CHARLES M. MCDONALD, *Respondent*.

*Reed & Giesa, P.S.,* and *D. Roger Reed,* for appellant.

*F. Lawrence Taylor, Jr. (McDonald & Malone* and *Charles M. McDonald,* of counsel), for respondent.

DURHAM, J. — In 1987, the Scott Fetzer Co. (Fetzer) sued Dwight's Discount Vacuum Cleaner City (Dwight's) over the ownership of 120 vacuum cleaners, valued at $19,000. Dwight's prevailed on a motion to dismiss for lack of jurisdiction, and requested attorneys fees of $180,914. The trial judge granted $116,788. We reversed that award as excessive and remanded the issue for the trial judge to re-evaluate both the hourly rate and the number of hours claimed. On remand, the trial judge reduced the total award of fees and costs to $72,746.38. The sole issue before us is whether the trial court properly calculated those fees. We hold that

it did not, and further reduce the total award of fees and costs to $22,454.28.

Fetzer raises two issues: (1) whether the trial court correctly decided the point at which the jurisdictional defense reasonably became available for the purpose of awarding attorneys fees; and (2) whether its decision to award appellate attorneys fees at the rate of $150 per hour was correct. We affirm the court's decision as to the hourly rate for appellate work. However, we conclude that the number of hours awarded for bringing the initial jurisdictional motion exceeded those that were reasonably necessary to prevail on that motion.

Dwight's[1] cross-appeals the trial court's decision: (1) not to award it appellate fees for failure to comply with RAP 18.1, and (2) to adopt the hourly figures proposed by Fetzer's expert for the purpose of determining reasonable appellate fees. We affirm the trial court's adoption of the hourly figures proposed by one of Fetzer's experts for appellate work and remand. We also affirm the trial court's decision to deny part of those fees for failure to comply with the appellate rules.

The facts underlying the dispute between Fetzer and Dwight's are adequately detailed in *Scott Fetzer Co. v. Weeks*, 114 Wn.2d 109, 786 P.2d 265 (1990) (hereinafter *Fetzer I*) and for the most part will not be repeated here. *See Fetzer I*, at 111-12. Briefly, Fetzer commenced a lawsuit against Dwight's in Spokane County on July 11, 1986. Three days later, Dwight's began a lawsuit against Fetzer based on the same facts in the United States District Court for the Western District of Texas. By letter dated July 17, 1986, Dwight's' attorney, Charles McDonald, questioned the jurisdiction of the Washington court. McDonald prepared a motion to dismiss for lack of jurisdiction, as well as a supporting brief and affidavit, in September 1986. These materials were not signed and filed until early

---

[1]Following the remand hearing, Dwight's assigned its entire interest in the award of fees and costs in this action to its attorney, Charles McDonald, who was substituted as defendant. Nonetheless, for the sake of clarity, we will continue to refer to the defendant and cross appellant as "Dwight's". References to McDonald will be solely to his role as Dwight's' attorney.

February 1987.[2] Dwight's filed an answer on October 15, 1986 which also raised the jurisdictional issue. On March 6, 1987, Dwight's prevailed on its motion as to lack of jurisdiction. Dwight's was also granted attorneys fees pursuant to RCW 4.28.185(5)[3] in the amount of $116,787.54.

The Court of Appeals reversed the award, stating that Dwight's did not prevail on the merits. The appellate court also denied Dwight's' request for appellate fees for failure to comply with RAP 18.1. This court accepted review and reversed the Court of Appeals regarding the "prevailed on the merits" issue. We then remanded the case to the trial court for an appropriate award of attorneys fees in accordance with the principles articulated in that opinion. *Fetzer I*, at 124-25.

Following remand, a hearing was held to determine the amount of reasonable attorneys fees. The five attorneys asserting a claim to fees are Charles McDonald (Dwight's' Texas attorney), Russell Van Camp (Dwight's' Spokane attorney), Jacquelyn Golly (an associate of Van Camp's), Dustin Deissner (an associate of Van Camp's) and F. Lawrence Taylor (Dwight's' Spokane attorney).

Dwight's called Robert Henderson, who had been practicing law in the Spokane area since 1970, as its expert witness. Fetzer called two attorneys as expert witnesses: Curtis Shoémaker, who had been practicing in the Spokane area since 1966; and Joseph Delay, who had been practicing law in the Spokane area since 1952. For ease of reference, we have summarized the expert testimony in the following two charts:

---

[2]The affidavit supporting the motion is dated "8th day of September, 1986". Clerk's Papers (CP), at 118. The brief and motion both originally had September 1986 dates, which were crossed out by hand and replaced with the February 1987 filing date. CP, at 136, 138.

[3]This statute, often referred to as the long-arm statute, states that "[i]n the event the defendant is personally served outside the state [under this statute], and prevails in the action, there may be taxed and allowed to the defendant . . . a reasonable amount to be fixed by the court as attorneys' fees". RCW 4.28-.185(5).

| Expert Testimony on Attorneys Fees in Hours | | | | |
| --- | --- | --- | --- | --- |
| | Trial Ct. | Ct. App. | S. Ct. | Remand |
| Henderson[4] | 640.65 | 215.00 | 198.25 | 351.00 |
| Shoemaker | 70.00 | 36.00 | 31.00 | 35.00 |
| Delay | 32-52 | 38.5-59 | 39-54 | 34-42.5 |

| Expert Testimony on Maximum Hourly Rates | | |
| --- | --- | --- |
| | Trial | Appellate |
| Henderson | $125 | $150 |
| Shoemaker | $105-$115 | $115-$125 |
| Delay | $125 | $125 |

The trial court concluded that reasonable hourly fees would be awarded as follows:

| | Trial Work | Appellate Work |
| --- | --- | --- |
| McDonald | $125/hr | $150/hr |
| Van Camp | $125/hr | |
| Taylor | $100/hr | $125/hr |
| Deissner | $85/hr | |
| Golly | $75/hr | |

The trial court further concluded that the jurisdictional "issue was properly raised after the Answer was filed on October 15, 1986". Clerk's Papers (CP), at 862. The court awarded Dwight's all its claimed attorneys fees up to that date. The court determined that Dwight's was additionally entitled to fees for work done "from February 7, 1987, when Mr. McDonald travelled to Spokane for the purpose of discussing the jurisdictional issue with co-counsel in preparation of filing . . . until the matter was heard and determined by the trial court [on March 6, 1987]". CP, at 862. The court, after reviewing the time sheets for the trial court work of the various attorneys, awarded fees as follows:

---

[4]Witness Henderson did not testify to any exact number of hours for work up to and including the motion to dismiss. Henderson did testify that all such hours requested were reasonable. The figure for the number of trial court hours was arrived at by adding up the hours requested in the October 24, 1990, application for attorneys fees, as well as the affidavit of F. Lawrence Taylor.

|  | Hours awarded | Fee awarded |
|---|---|---|
| McDonald | 418.24 hours or | $52,280.00 |
| Van Camp | 18.90 hours or | $2,362.50 |
| Taylor | 26.20 hours or | $2,620.00 |
| Deissner | 18.55 hours or | $1,576.75 |
| Golly | 0.00 hours or | $0.00 |

The total awarded for the trial court work was $58,839.25.

Turning to the fees requested for appellate work, the trial judge determined that, inasmuch as Dwight's failed to comply with RAP 18.1[5] in the Court of Appeals, none of its attorneys were entitled to fees for their work at that appellate level. For work at the Supreme Court and on remand, the attorneys claimed the following hours:

|  | Supreme Court | Remand |
|---|---|---|
| McDonald | 136.05 hours | 270 hours |
| Taylor | 62.20 hours | 81 hours |

The trial judge felt that these hours were unjustified. Instead, the court stated that, in determining reasonable fees for the work done before the Supreme Court and on remand, it "was greatly influenced by the plaintiff's experts, and adopted the high figure that was suggested by Mr. Delay in its determination of reasonable attorney fees". CP, at 864-65. The court then awarded each attorney his pro rata share of the total number of allowable hours suggested by Delay for the Supreme Court level (54 hours) and on remand (42.5 hours). The total award of reasonable attorneys fees and costs amounted to $72,746.38. Both parties appealed the trial court's decision. We consider these challenges below.

FEES FOR THE JURISDICTIONAL MOTION

■ Generally, in order to reverse a fee award, it must be shown that the trial court manifestly abused its discretion. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987). This narrow standard of review has been

---

[5]Former RAP 18.1(c) required Dwight's to file an affidavit detailing its expenses 7 days before oral argument.

applied even when the fee award involved carrying out the mandate of this court. *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 375, 798 P.2d 799 (1990). However, the deference given to the trial court's award of fees under the long-arm statute has been curtailed by the *Fetzer I* decision. In *Fetzer I*, we pointed out that our former touchstone for awarding fees — "fair play and substantial justice" — gave little guidance to either the trial or appellate courts:

> "Fair play and substantial justice" is unsuitable not only as an expression of the legislative intent underlying the fees award statute, but also as a standard for determining or reviewing awards in particular cases. . . .
> . . . [A]wards of attorney fees under RCW 4.28.185(5) have become all-or-nothing propositions, with trial court decisions accorded unquestioned deference so long as lip service has been paid to the notions of fair play and substantial justice.

*Fetzer I*, at 118. Hence, this court abandoned the "fair play and substantial justice" standard for such fees in part because it insulated rulings on fees requests from meaningful review. *Fetzer I*, at 119. Although our review is still based on an abuse of discretion standard, the discretion of the trial court is now adjudged against the reasonable fees standard of RCW 4.28.185(5).

Fetzer's argument as to the reasonableness of the fees award is based upon the date it believes the motion to dismiss was finished. Fetzer argues that, because the motion as to lack of jurisdiction and its supporting brief and affidavit were all completely prepared by September 8, 1986, this should be the latest date for which attorneys fees should be granted. Fetzer believes that the trial court erred in choosing to award attorneys fees for work done until the answer was filed (October 15, 1986) rather than using this earlier date.

We agree with Fetzer that the award of fees for prevailing on the jurisdictional motion is excessive. However, we do not limit the award solely to services performed prior to the date on which the motion was prepared. As pointed out in the original *Fetzer* decision, a CR 12(b)(2) motion raising the jurisdictional defense may be brought even before an

answer is filed. *Fetzer I*, at 122. The trial court here was mistaken in relying upon the date the answer was filed as being the cutoff date for awarding fees. Nonetheless, even a mechanistic summation of the hours billed up to an earlier date would not automatically fulfill the "reasonableness" requirement of the long-arm statute.

■ RCW 4.28.185(5) authorizes an award of "a reasonable amount to be fixed by the court as attorneys' fees". In *Fetzer I*, we set forth the two fundamental principles by which the reasonableness of an award of fees under the long-arm statute is governed:

> First, a prevailing defendant should not recover more than an amount necessary to compensate him for the added litigative burdens resulting from the plaintiff's use of the long-arm statute. Second, where the defendant prevails by obtaining a ruling that jurisdiction under the long-arm statute does not properly lie, his award should not exceed the amount in attorney fees he would have incurred had he presented his jurisdictional defense as soon as the grounds for the defense became available to him.

*Fetzer I*, at 120. Unlike many fee shifting statutes which attempt only to punish frivolous litigation or encourage meritorious litigation, RCW 4.28.185(5) balances the dual purposes of recompensing an out-of-state defendant for its reasonable efforts while also encouraging the full exercise of state jurisdiction. The principles outlined in *Fetzer I* serve to ensure that otherwise valid claims are not abandoned merely out of fear of the possibility of fee shifting. "To not so limit such fees would thwart the legislative intent to allow full exercise of state jurisdiction to the extent allowed by due process." *Fetzer I*, at 125 (Brachtenbach, J., concurring).

■ Because of this desire to limit fees to only those necessary to prevail on the jurisdictional motion, we adopted the lodestar approach to fee calculation under RCW 4.28.185(5). *Fetzer I*, at 124. The lodestar approach was first adopted in this jurisdiction for use under the Consumer Protection Act. *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597-99, 675 P.2d 193 (1983). A lodestar award is arrived at by multiplying a *reasonable* hourly rate by the number of

hours *reasonably* expended on the matter. *Fetzer I*, at 124. "In principle, it is grounded specifically in the market value of the property in question — the lawyer's services." Dan B. Dobbs, *Awarding Attorney Fees Against Adversaries: Introducing the Problem*, 1986 Duke L.J. 435, 467 (1986).

Although the foundation of the award is built upon objective criteria, adjustments to the award are permitted to account for a number of subjective factors, *Fetzer I*, at 124. *See also Bowers*, at 597-99. Traditionally, these factors include:

> the time expended, the difficulty of the questions involved, the skill required, customary charges of other attorneys, the amount involved, the benefit resulting to the client, the contingency or certainty in collecting the fee and the character of the employment.

*Fetzer I*, at 124 (quoting *Dailey v. Testone*, 72 Wn.2d 662, 664, 435 P.2d 24 (1967)). However, many of these factors, such as the time expended or the customary fees, are included in, and cannot be considered separately from, the initial lodestar determination. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 898-900, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984) (novelty and complexity of issues, skill of attorney, and results obtained subsumed in determination of reasonable fee under lodestar method).

■ What is particularly obvious in this case is the gross disparity between the amount requested, and even the amount actually awarded by the trial court, when compared to the amount in controversy. While some of the factors listed above tend to imply an upward adjustment of the fee award, a lodestar figure which grossly exceeds the amount involved should suggest a downward adjustment. As Justice Dimmick has previously pointed out, "[t]he lodestar method, having no relation to the amount involved, may lead to an attorney's fee which is equal to or exceeds the judgment recovered . . .." *Bowers*, at 607 (Dimmick, J., concurring in part, dissenting in part). While the amount in dispute does not create an absolute limit on fees, that figure's relationship to the fees requested or awarded is a vital consideration when assessing their reasonableness.

■ *Bowers* outlined generally how a court should determine "reasonable hours":

> The trial court must determine the number of hours reasonably expended in the litigation. To this end, the attorneys must provide reasonable documentation of the work performed. This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (*i.e.*, senior partner, associate, etc.). The court must limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time.

*Bowers*, at 597. In adjudging "reasonable hours" under the long-arm statute, courts should attempt to determine the amount of time that it would take a competent practitioner to recognize the jurisdictional issue, research the relevant law, discover the pertinent facts, and then prepare, file and prevail upon a CR 12(b)(2) motion.[6]

The burden of proving the reasonableness of the fees requested is upon the fee applicant. *Blum*, 465 U.S. at 897. Dwight's' attorneys have provided extensive documentation of their efforts in this case. While this documentation forms the starting point under the lodestar method, it is not dispositive on the issue of the reasonableness of the hours. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987). "[T]he trial court, instead of merely relying on the billing records of the plaintiff's attorney, should make an independent decision as to what represents a reasonable amount for attorney fees". *Tampourlos*, at 744. Along with the considerations outlined above, the trial court may also examine reasonableness of the hours claimed in light of the testimony of other attorneys called as experts.

---

[6]In *Fetzer I*, we stated that, in some circumstances, the costs of trial preparation may also be recovered under the long-arm statute, in order to compensate the defendant for the additional burdens imposed by the assertion of jurisdiction. *Fetzer I*, at 123 n.7. As the fee award is meant only to compensate for the added litigative burdens resulting from the Washington litigation, it is also appropriate for the court to discount any work which could be used in ancillary or parallel litigation.

Here, the trial court relied on such expert testimony in other instances, but failed to take such testimony into account as to the reasonableness of the hours claimed for bringing the CR 12(b)(2) motion. The court was aware that the jurisdictional motion was available and ready in September, and that much of the activity on the part of Dwight's' attorneys related to the parallel federal court case in Texas. The trial court stated:

> Mr. McDonald prepared his Motion as to Lack of Jurisdiction, as well as his Brief in Support thereof in September, 1986, although they were not signed until February 9 and February 2, 1987, respectively, a month prior to the hearing on said motion.
> There appears to have been much activity in both of the cases, that is the Texas case and the Washington case, and trial strategy was undertaken by counsel for each party. However, no Answer was filed by Dwight's until October 13, 1986.

CP, at 856. Yet despite these frank observations, the trial court awarded hours up to the date the answer was filed. The sum of its explanation for this decision is as follows:

> Although plaintiff suggests that Dwight's had completed the amount of lawyering that reasonably should have been necessary to prevail on the jurisdictional defense in September, 1986, it is this court's determination that this issue was properly raised after the Answer was filed on October 15, 1986. The defendant, Dwight's, is entitled to reasonable attorney fees with respect to their work as to the jurisdictional issue through October 15, 1986, and from February 7, 1987 . . . until the matter was heard and determined by the trial court.

CP, at 862. Hence, a total of 481.89 hours — the equivalent of almost 3 months of uninterrupted legal work by one attorney — was awarded, with no examination of the actual reasonableness of these hours.[7]

We find this sum to be patently unreasonable in this case. Because of the State's strong interest in allowing its

---

[7]The trial court actually acknowledged that the fee award seemed unreasonable.

While the award of $58,839.25 at the trial court level, in a case that resulted in dismissal on the jurisdictional issue, appears to be an "outrageous abuse" on the part of the defendant, there is no question that the plaintiff chose the Washington forum . . .. Each party "declared war" on the other,

citizens the broadest constitutionally permissible access to our courts, we must zealously circumscribe the scope of advocate activity which will be reimbursed under the long-arm statute. Dwight's' attorney was aware of the jurisdictional issue from the time the suit was filed. The brief and affidavit which ultimately prevailed were prepared sometime in September. As the trial court noted, much of the activity for which Dwight's is attempting to recover was useful for its Texas case, as well as the Washington case. Our review of the billing records for that month show that Dwight's' lead attorney McDonald spent a possible total of 34 hours[8] between September 6 to 8 to research and prepare this motion, brief, and affidavit. Taking this as the essential core of the work to be done, we find that the high figure of 70 hours proposed by Curtis Shoemaker is a reasonable amount of time to be awarded for prevailing on this motion. Utilizing a pro rata distribution based on the hours accepted by the trial court, we award hours as follows: McDonald, 60.75 hours; Van Camp, 2.75 hours; Taylor, 3.81 hours; Deissner, 2.69 hours.

HOURLY RATE FOR APPELLATE WORK

As explained above, this court has adopted the "lodestar" approach for determining reasonable fees awards under RCW 4.28.185(5), part of which is the determination of a reasonable hourly rate. Dwight's' expert, Henderson, had stated in his affidavit that $150 per hour would be a reasonable attorneys fee for both McDonald and Taylor for their appellate work. The highest figure offered by either of

---

using tactics that are, in retrospect, subject to question. . . . [T]hese fees could have been greatly reduced if the parties had determined to resolve this matter amicably, rather than in the way they did.

CP, at 867. Rather than lament the outrageousness of the fees, trial courts should take affirmative action to limit fees to the amount reasonably necessary to recompense the defendant for the additional burdens imposed by the exercise of jurisdiction.

[8]This estimate is probably generous, as the billing record indicates that some of this time was spent on preparation of further discovery instruments. CP, at 286.

Fetzer's experts was $125 per hour. Fetzer argues that Henderson did not offer any direct testimony stating that $150 was a reasonable hourly fee for appellate work. However, Henderson discussed the $150 figure twice during cross examination. As well, his affidavit was before the court, in which he specifically opines that this would be a reasonable hourly fee for appellate work. The trial court did not abuse its discretion in adopting this figure.

## APPELLATE FEES AND RAP 18.1

The unpublished Court of Appeals decision in *Fetzer I* stated both that Dwight's was not entitled to attorneys fees because it did not "prevail in the action" for purposes of RCW 4.28.185(5), and that Dwight's would not have been entitled to attorneys fees on appeal because of Dwight's' failure to comply with RAP 18.1. That court denied the appellate fees because Dwight's had failed to file an affidavit detailing its expenses 7 days prior to oral argument, as required by former RAP 18.1(c). Dwight's had, however, served on opposing counsel such an affidavit 3 months before oral argument and filed the same affidavit with the appellate court on the day of oral argument. This court directed the trial court on remand to "determine what, if any, award Dwight's is entitled to for its appellate efforts". *Fetzer I*, at 124-25. The trial court denied Dwight's' lawyers' request for attorneys fees for their work at the Court of Appeals level for failure to comply with RAP 18.1.

"Generally, strict compliance with RAP 18.1(c) is required." *Donovick v. Seattle-First Nat'l Bank*, 111 Wn.2d 413, 418, 757 P.2d 1378 (1988). Dwight's contends that its failure to comply strictly with former RAP 18.1(c) was due to a miscommunication between Washington and Texas counsel, and that this technical oversight should not be the basis for denying its fees for work in the Court of Appeals. However, the case law is replete with examples of attorneys fees being denied for failure to timely submit an affidavit of expenses. *See, e.g., Kreidler v. Eikenberry*, 111 Wn.2d 828,

841, 766 P.2d 438 (1989); *Nate Leasing Co. v. Wiggins*, 114 Wn.2d 508, 521-22, 789 P.2d 89 (1990); *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 856, 792 P.2d 142 (1990). The trial court did not abuse its discretion in refusing to allow appellate fees for failure to comply strictly with former RAP 18.1(c).

### RELIANCE ON EXPERT OPINION

Dwight's argues that, in adopting the figures proposed by Fetzer's experts, the trial court abandoned its responsibility to make an individualized determination of the lodestar figure based on the actual billing records of the attorneys involved. All of the experts testified that, in forming their opinions, they had thoroughly reviewed the attorneys' billing records, as well as this court's decision in *Fetzer*. The trial court explicitly recognized the thorough review conducted by Fetzer's experts of the "discovery, pleadings and attorney billings submitted in this case". CP, at 969. Fetzer's expert, Delay, explained his methodology:

> I approached it as the amount of lawyering that was reasonably necessary, having prevailed on the jurisdictional issue, and that only, and so I reconstructed from the facts what I thought was the high and low figure.

Report of Proceedings (RP), at 184-85. Fetzer's second expert, Shoemaker, followed a similar approach.

In contrast, Dwight's' expert Henderson opined that all $203,079.12 of the fees and costs demanded by Dwight's for work at the trial, appellate and remand levels, were reasonable.[9] This figure should be considered in light of the following excerpt from the concurring portion of Justice Brachtenbach's concurrence/dissent in *Fetzer I*:

> Dwight's Texas counsel claims in the trial court, $11,125 in fees for taking depositions, $14,375 for briefing and $11,875 in preparation for *trial*. These figures represent only minimum amounts, limited to those where the affidavit clearly identifies those categories. Incredibly, Texas counsel sought at least

---

[9]As should be clear from this opinion, the reasonableness of the fees is not necessarily related to the date that the motion to dismiss was actually brought.

another $14,400 for briefing on appeal to the Court of Appeals *solely* on the issue of jurisdiction. Likewise, I am astonished at a claim of at least an additional $8,650 for briefing on the single-issue petition for review even though no new citations or theories arose from the Court of Appeals decision. These claims are exorbitant.

*Fetzer I*, at 126 (Brachtenbach, J., concurring in part, dissenting in part).

This court has stated before that the actual hours billed by an attorney are only the starting point for a determination of the fee award. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987). *See also Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987). As discussed above, in arriving at a determination of reasonable fees, the trial court may be aided by expert opinion. The trial court did not abuse its discretion in agreeing with Delay's analysis.

█ Over a decade ago, the United States Supreme Court exhorted attorneys to exercise "billing judgment" in fees requests so as to avoid a costly second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). Unfortunately, this case demonstrates that the Court's words have not been uniformly heeded. This case began with an uncomplicated dispute over 120 vacuum cleaners worth less than $20,000. The jurisdictional problems with the Washington case were manifest. Out of these simple facts, Dwight's' attorneys have fashioned a claim for over $200,000 in attorneys fees. As discussed above, a claim for over 10 times the amount in contention, in a run-of-the-mill commercial dispute, certainly gives rise to a suspicion of unreasonableness, and demonstrates little, if any, billing judgment. Finally, both Texas and Washington have ethical rules mandating that attorneys charge only a reasonable fee. Washington Rules of Professional Conduct, rule 1.5; Texas State Bar Rules, art. 10, § 9, rule 1.04. We take this occasion to remind practitioners that such considerations apply whether one's fee is being paid by a client or the opposing party.

To summarize, we hold that the 481.89 hours awarded by the trial court for prevailing on the CR 12(b)(2) motion were unreasonable and an abuse of discretion. We reverse the trial court as to that issue and instead grant Dwight's a total of 70 hours for prevailing on the jurisdictional motion. Those hours, and their corresponding fees, are broken down as follows:

| | | |
|---|---|---|
| Mr. McDonald: | 60.75 hours or | $7,593.75 |
| Mr. Van Camp: | 2.75 hours or | $343.75 |
| Mr. Taylor: | 3.81 hours or | $381.00 |
| Mr. Deissner: | 2.69 hours or | $228.65 |

Hence, we grant a total of $8,547.15 as fees for prevailing on the jurisdictional motion. Additionally, the trial court granted $7,676.50 for work performed at the Supreme Court, plus costs of $100, and also granted $6,130.63 for work performed on remand. We uphold the remainder of the trial court's decision. Finally, we deny Dwight's' request for attorneys fees for this appeal.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, SMITH, JOHNSON, and MADSEN, JJ., concur.