IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KPS MANAGEMENT, | ) | |
| | ) | No. 33061-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EUKENIO ESWINI, Individually; | ) | UNPUBLISHED OPINION |
| EDWARD ESIWILY, Individually; | ) | |
| and OTHER UNKNOWN TENANTS, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — KPS Management (KPS), a landlord, appeals the trial court's award of attorney fees in an unlawful detainer action it commenced after tenants failed to respond to a three-day notice demanding $409 in unpaid rent. It is undisputed that the $409 in rent, and more, remained owing at the time of the unlawful detainer show cause hearing. The trial court nonetheless refused the landlord's request that it issue a writ of restitution based on evidence that the rent could and would have been paid but for a misunderstanding about an earlier threat of eviction. It then awarded the tenants $12,820 in attorney fees as the prevailing party.

While we reject KPS's argument that the tenants did not prevail in the action, we agree it was an abuse of discretion for the trial court to award the entire amount of fees requested by the defendants without addressing KPS's tenable objections. We remand with directions to reconsider the fee award in light of most of the objections raised by KPS.

## FACTS AND PROCEDURAL BACKGROUND

Edward Esiwily and Eukenio Esiwini, son and father respectively, lived in an apartment they rented from KPS Management. Edward[1] had a Housing Assistance Plan (HAP) with the Spokane Housing Authority under which the housing authority paid $411 toward Edward's and Eukenio's $535 per month rent. Edward also received Social Security benefits that were managed for him by Goodwill Industries. They were sufficient to cover the remaining $124 of the monthly rent obligation.

On June 16, 2014, KPS sent a letter to Edward, Eukenio, and the housing authority, notifying them that it was terminating the lease because, it alleged, Edward and Eukenio had violated its Use of Premises and Disturbing the Peace provisions. The letter made specific reference to the lease's provision that "'[r]esponses to the premises by law enforcement officers or arrests for any reason may be a cause for termination of tenancy and eviction.'" Ex. D-104. Police had been called to the apartment as the result of a

---

[1] Because of the gentlemen's similar last names, we use their first names. We intend no disrespect.

2

complaint about Eukenio. The letter asked that Edward and Eukenio vacate the property by June 30, failing which eviction would be pursued under RCW 59.18.130(8).

Upon receipt of the letter, and pursuant to standard practice, the housing authority sent its own letter on June 24, notifying KPS and Edward that it must terminate Edward's HAP for the KPS apartment, effective June 30. As a housing authority representative would later testify, the housing authority terminates HAPs upon learning of a lease termination.

For reasons not revealed by the record, KPS did not pursue the eviction that had been threatened for the police response. But on July 16, after only Goodwill Industries made partial payment toward July's rent, KPS gave a three-day notice to Edward and Eukenio to pay the $409 rent that remained owing, or vacate. The rent was not paid. On July 24, KPS filed this unlawful detainer action based on nonpayment of rent. On July 26, KPS's on-site manager saw Eukenio outside his apartment and served him with a summons and two copies of the unlawful detainer pleadings. An order to appear and show cause set a hearing date of August 6 for KPS's request for a writ of restitution.

In mid-July, Edward, who was then in jail for trespasses committed at the city's bus plaza, met with Lee Taylor, a care coordinator, at Spokane's Community Court.[2] He

---

[2] Spokane Community Court is a laudable program operated by the Spokane Municipal Court that, as described by the city's website, is "a specialized docket . . . composed of offenders who are charged with various nuisance / quality of life charges from events in the city's urban core. Using a combination of offender needs assessment,

had been asked by Edward's criminal defense lawyer, Francis Adewale, to meet with Edward and see if Mr. Taylor could help Edward resolve his housing issues. After meeting with his family and ascertaining the problem, Mr. Taylor helped Edward obtain appointment of a lawyer to represent him in this action. Barry Pfundt was appointed as Edward's lawyer on July 30.

The next day, Mr. Pfundt wrote to Frank King, the lawyer for KPS, asserting that Edward was disabled and asking, as a reasonable accommodation, that KPS "voluntarily dismiss the unlawful detainer that has been filed against him, *allow him time to restore his housing subsidy*, and continue to accept monthly payment of rent." Ex. P-5 (emphasis added).

Before the August 6 date for the show cause hearing, Mr. Pfundt requested, and Mr. King and KPS agreed, to a one-week continuance to give Edward and Eukenio time to bring their rent current.

On August 12, Mr. Pfundt requested another one-week continuance, until August 20, in order to bring the rent current, and Mr. King and KPS again agreed.

When the rent was still not paid, the parties appeared for the August 20 hearing, where a series of problems were encountered. First, a potential conflict for Judge Linda

on-site wrap around social services and intensive case monitoring, the Community Court operates with the goal of assisting the offenders with getting the services they need to put their lives back on track." *See* https://my.spokanecity.org/courts/municipal-court/therapeutic/[https://perma.cc/2CK6-6YFE].

Tompkins, to whom the case was assigned, came to light for the first time; she offered to recuse herself and KPS asked that she do so. According to an affidavit later filed by Mr. Pfundt, Mr. Pfundt "pleaded with the court to immediately assign this matter to another judge. I had witnesses and family members of the Defendants waiting who had volunteered to appear in court and were missing work and other obligations." Clerk's Papers (CP) at 205. The court obliged, reassigning the case the same day to Salvatore Cozza, against whom Mr. Pfundt filed an affidavit of prejudice. Again, on the same day, the case was reassigned to Judge James Triplet. But upon learning that Edward and Eukenio are both non-English speakers, Judge Triplet concluded that Eukenio, at a minimum, should have an interpreter.[3] Since the gentlemen speak Chuukese and no Chuukese interpreter was available, the show cause hearing was continued for five days, to August 25.

The show cause hearing proceeded before Judge Kathleen O'Connor on August 25. In the three-hour hearing, seven witnesses were called and nine exhibits were admitted. In the plaintiff's case, KPS presented the following witnesses and evidence:

> A KPS employee, who testified to going to Edward's and Eukenio's apartment on July 16 and, when no one answered a knock on the door, posting and then mailing copies of the three day notice to them. Copies of the three-day notices were offered and admitted. Ex. P-1.

---

[3] The gentlemen had brought family members who could translate for them. Judge Triplet determined that family member interpretation was fine for Edward, who consented to family interpretation with advice of legal counsel, but Eukenio was unrepresented.

5

A KPS onsite manager, who testified that he contacted Eukenio on July 26 on the second floor of the apartment building, where the gentlemen's apartment is located, and served Eukenio with two copies of the summons and complaint outside the apartment. Copies of his proof of service (which he admitted he had erroneously marked for only personal, not substitute service) were offered and admitted. Ex. P-2.

A broker for KPS who testified to the status of Edward's and Eukenio's rent arrears, which were $2,059 at the time of the hearing. Copies of the parties' lease and KPS's statement of the gentlemen's account were offered and admitted. Exs. P-3, P-4. On cross-examination, she testified that she had heard from KPS's lawyer that the housing authority had offered to make payment of its portion of the rent, but it had not been paid yet, and if it were paid, it would not be sufficient to cover the arrears. A copy of KPS's June letter threatening lease termination was offered and admitted. Ex. D-104.

Mr. King also offered, and the court admitted, Mr. Pfundt's July 31 letter indicating that

Mr. Pfundt was aware at that time that what was needed was to restore his client's

housing subsidy. Ex. P-5.

In the defense case, Mr. Pfundt presented the following witnesses and evidence:

Mr. Adewale, who testified that Edward had been in county jail during most of July and that Mr. Adewale managed to get Edward released on his own recognizance on August 4 after Lee Taylor informed Mr. Adewale and the city prosecutor that Edward's absence from his subsidized apartment might cause him to lose his housing subsidy. A copy of the August 4 order releasing Edward was offered and admitted. Ex. D-103.

A representative of the housing authority, who explained HAP procedures, including why, upon receiving the June letter from KPS, it had to cease making rent payments until any dispute with the landlord over the tenancy was resolved. He testified that if Edward's and Eukenio's tenancy in the KPS apartment was not going to be terminated, the housing authority would bring its portion of the rent current. A copy of the housing authority's June 24 notice of termination of HAP contract was offered and admitted. Ex. D-105.

6

A payee manager for Goodwill Industries who explained that Edward was one of her clients; that his Social Security benefits were sufficient to cover the portion of his rent that was not covered by the housing authority subsidy; and that Edward had sufficient benefits to pay his August rent. She testified that she had intentionally not paid the August rent after hearing Edward was being evicted, so that he would have sufficient funds available to pay a deposit and get into new housing. She testified that if Edward and Eukenio's tenancy in his KPS apartment was not terminated, funds were available to bring Edward's portion of the rent current.

At the conclusion of the evidence, and only a few sentences into Mr. King's closing argument, Judge O'Connor described the rent nonpayment as a "chicken and egg" problem and announced that she was unwilling to enter a writ of restitution where it was KPS's notice of intent to terminate the lease for other reasons that set into motion the housing authority's and Goodwill Industries' cessation of rent payments on Edward's behalf. Report of Proceedings (RP) at 107. She directed Mr. Pfundt to prepare a proposed order. When asked by him about attorney fees, she invited him to make a motion.

The parties appeared before Judge O'Connor on October 20 for presentment of Edward's proposed Order Granting Possession to Defendant. KPS had filed a four-page objection to matters in Edwards' proposed order that it contended the court had never found, and had filed its own proposed order. Judge O'Connor rejected Edward's proposed order and instead entered that proposed by KPS. In explaining her reasons for rejecting Edward's proposed order, she told Mr. Pfundt she agreed with most of Mr. King's objections, and, "You have all kinds of findings I did not make. You might have

7

wanted me to make them, but I did not." RP at 127. She specifically noted that no jurisdictional issue had been established by Edward. She also said,

> I did not make findings about disability. That issue came up because Social Security was being held by a protective payee. Just because a person is receiving Social Security does not mean he/she is disabled. I did not make a decision on that issue. What it means is that somebody is handling the money. It could be because he does not speak very good English. I do not know why it is. The bottom line is once we got it ironed out, the people that were paying their rent, Spokane Housing Authority for part of it and Goodwill for another part, it got paid.

RP at 128-29.

On November 3, Edward filed a motion for an award of his attorney fees, requesting an award of fees for 64.1 hours' worth of work, at a rate of $200 per hour, for a total award of $12,820.[4] Mr. Pfundt filed an affidavit indicating he had written off 25.3 hours expended after September 10. KPS filed an objection, and Edward filed a reply.

On December 22, Judge O'Connor filed an order granting Edward all of the fees Mr. Pfundt had requested, without reduction. She found Mr. Pfundt's hourly rate of $200 to be reasonable. Her reasons offered for awarding all of the fees requested were that representing a tenant in an unlawful detainer action is not attractive to many lawyers; the time frame to address a writ of restitution is short; there were three continued or failed

---

[4] "64.1 hours" is a correction to Mr. Pfundt's summary, which contains an arithmetic error.

8

hearings before the hearing held in her court; and the issues addressed at the hearing were different from those typically addressed at an unlawful detainer hearing.

KPS appeals.

## ANALYSIS

The legal basis for Edward's fee request is uncontested: he relies on the parties' lease agreement, which includes a one-way fee provision in favor of KPS, and on RCW 4.84.330, which makes such provisions bilateral. *Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 489, 200 P.3d 683 (2009). The statute provides that in the case of such a provision, "the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements." RCW 4.84.330.

The burden of demonstrating that a fee is reasonable is on the fee applicant. *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993). A determination of reasonable attorney fees begins with a calculation of the "lodestar," which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Mahler v. Szucs*, 135 Wn.2d 398, 433-34, 957 P.2d 632, 966 P.2d 305 (1998). A proposed lodestar figure is typically presented by lawyer affidavit, based on billing records. The amount of time actually spent by a prevailing attorney is relevant but is not dispositive. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987).

9

Since "[t]he court must limit the lodestar to hours reasonably expended, [it] should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983). Where a lawyer sends a bill to a client, the client's unwillingness to pay an unreasonable fee operates as a check, requiring the lawyer to exercise billing judgment. "Courts must take an *active* role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought," since they substitute for the client as a check against an unreasonable fee, again requiring the lawyer to exercise billing judgment. *Mahler*, 135 Wn.2d at 434-35. "Courts should not simply accept unquestioningly fee affidavits from counsel." *Id.*

An appellate court will uphold an attorney fee award unless it finds the trial court manifestly abused its discretion. Discretion is abused when the trial court exercises it on untenable grounds or for untenable reasons. *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). Where specific objections are lodged to a fee request, a trial court abuses its discretion when it approves the request in a conclusory fashion with no indication as to how it resolved, or whether it even considered, the specific objections of the opposing party. *Berryman v. Metcalf*, 177 Wn. App. 644, 658-59, 312 P.3d 745 (2013). Its failure to address such concerns is reversible error. *Id.*

10

*Prevailing party identification*

KPS first argues the trial court erred in finding that Edward was a prevailing party since, it contends, both sides prevailed on major issues: KPS demonstrated rent was owed and it was merely denied a writ of restitution; the tenants failed to prevail on any affirmative defense.[5]

Edward's threshold response is that KPS cannot challenge the trial court's decision that he was entitled to fees because its appeal was untimely as to final orders entered on September 3 and October 21, 2014.[6] But both of those orders dealt with the issue of possession. Edward was required to file a motion for attorney fees and did so on November 3; it was only then that the issue of whether there was a prevailing party was required to be raised. The trial court's order resolving the fee request motion was entered on December 22, so KPS's January 14, 2015, notice of appeal was timely. *See* RAP 5.2(a) (requiring appeal within 30 days).

Turning to the merits of this threshold issue, Edward prevailed. Whether a party is a prevailing party under RCW 4.84.330 is a question of law reviewed de novo. *Wachovia*, 165 Wn.2d at 488. "[A] prevailing party is generally one who receives a

---

[5] Edward asserted as affirmative defenses lack of personal jurisdiction, lack of subject matter jurisdiction, violation of the Fair Housing Amendments Act of 1988, and asserted disability.

[6] A commissioner of our court earlier ruled that KPS's attempt to appeal those two orders was untimely. Comm'r Ruling No. 33061-3-III (Wash. Ct. App. Apr. 9, 2015).

11

judgment in its favor." *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 164, 795 P.2d 1143 (1990). "If neither wholly prevails, then the determination of who is a prevailing party depends upon who is the substantially prevailing party, and this question depends upon the extent of the relief afforded the parties." *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997).

In its complaint for unlawful detainer, KPS requested (1) that Edward's and Eukenio's tenancy be terminated and possession be restored to KPS, (2) that a writ of restitution be issued, and (3) a judgment for unpaid rent. Edward prevailed on the first two requests for relief, receiving judgment in his favor. That should resolve the issue, because the "right to possession" between landlord and tenant is the primary issue in an unlawful detainer case. *Angelo Prop. Co., LP v. Hafiz*, 167 Wn. App. 789, 808, 274 P.3d 1075 (2012). In addition, Edward never contested that rent was owed. While Edward's affirmative defenses were unavailing, he prevailed on the significant disputes presented by KPS's complaint.

### *Reasonableness of fee award*

That said, Edward did spend time on unsuccessful positions and KPS raised tenable objections to the amount of time expended by Mr. Pfundt. Neither are addressed by the trial court's conclusory findings.

Having been brought on as counsel through the efforts of Mr. Taylor, Mr. Pfundt obtained an immediate understanding of why the rent had not been paid, as evidenced by

12

his July 31 letter to Mr. King. The problem here was atypical but it was not complicated. It is clear from KPS's agreement to two continuances of its show cause hearing that it was willing to accept rent being brought current,[7] yet it had not been brought current by the time of the third hearing set for August 20, three weeks later. At issue monetarily was at most $2,059.

By the time the aborted hearing on August 20 was completed—a hearing that Mr. Pfundt indicates he was ready for—he had expended 22.4 hours on the matter, for total fees to that date of $4,480. During that time, Mr. Pfundt's time records disclose he had been able to meet with his client and with a representative of the housing authority, had corresponded and spoken more than a half dozen times with an "advocate" or "advocates" (perhaps Mr. Taylor?), had spoken a number of times with his client's family, and had expended over 11 hours preparing pleadings and engaging in preparation for the show cause hearing. These included his preparation of a four-page answer including affirmative defenses.

The interpreter problem that arose on August 20 required only a five-day continuance of the hearing—from a Wednesday to the following Monday. Yet, between completion of proceedings at court on the 20th and the following Monday morning,

---

[7] The trial court's order awarding fees states that there were two failed attempts at a hearing, but that is not supported by the record. Mr. Pfundt's time records suggest that the two continuances were agreed without the need for appearances.

13

August 25, Mr. Pfundt expended an additional 35.4 hours, amounting to another $7,080 in fees. The time is described as mostly spent on "research," "document review," "consult," and "hearing prep." CP at 177. Mr. Pfundt points out he was required during this timeframe to file a witness and exhibit list, in which he identified five witnesses and seven exhibits. He also unilaterally filed a two-page memorandum on personal jurisdiction. But KPS's objection that this cannot explain the dozens of hours expended in the short continuance from the original hearing date raises a viable issue. Mr. King represents that he billed approximately 17 hours for his entire representation of his client in the matter, as compared to the 64.1 hours requested by Mr. Pfundt.

We reject only one of KPS's objections out of hand. Edward (and for that matter, KPS) is not to be faulted for failing to secure an interpreter for the August 20 hearing or for the other developments that prevented the hearing going forward on that day. KPS's remaining objections, which appear at CP 179-187, are not addressed by the court's order entered on December 22, and need to be.

Both parties request an award of attorney fees on appeal if they prevail. Because Edward successfully resisted the timeliness of some of the orders appealed and successfully defended his prevailing party status, we find that both parties prevailed on major issues and deny both fee requests.

We reverse the Order on Defendant Edward Esiwily's Motion for Reasonable Attorney Fees and Costs and remand for proceedings consistent with this opinion. We

14

No. 33061-3-III
*KPS Mgmt. v. Esiwini*

include as an appendix a spreadsheet that includes daily time totals and periodic fee totals

for the fees requested that facilitated our review and might be helpful on remand.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.

15

**Rent due and owing at time of hearing: $2,059**

| Date | Time entries | Daily total | Total legal fees accrued as of select dates |
|---|---|---|---|
| 30-Jul | 0.1 | 0.1 | |
| 31-Jul | 0.3 | | |
| | 0.3 | 0.6 | |
| 4-Aug | 0.4 | | |
| | 0.3 | | |
| | 0.1 | | |
| | 0.2 | | |
| | 0.2 | | |
| | 0.1 | | |
| | 0.7 | 2 | |
| 5-Aug | 0.2 | 0.2 | |
| 6-Aug | 0.2 | 0.2 | $620 |
| 11-Aug | 0.2 | 0.2 | |
| 12-Aug | 0.6 | | |
| | 0.5 | | |
| | 0.1 | | |
| | 1 | 2.2 | |
| 13-Aug | 0.3 | 0.3 | |
| 15-Aug | 0.8 | 0.8 | $1,320 |
| 18-Aug | 0.2 | | |
| | 0.2 | 0.4 | |
| 19-Aug | 0.1 | | |
| | 0.2 | | |
| | 4.8 | | |
| | 5.4 | 10.5 | |
| 20-Aug | 1.5 | | |
| | 2.5 | | |
| | 0.9 | | |
| *Hours through completion of aborted hearing:* | | | *Fees through completion of aborted 8/20 hearing:* |
| 22.4 | | | *$4,480* |

*Continued on next page*

No. 33061-3-III
*KPS Management v. Esiwily*
Appendix

| Date | Time entries | Daily total | | Total legal fees accrued as of select dates |
|---|---|---|---|---|
| 20-Aug cont'd | 0.5 | | | |
| | 0.3 | | | |
| | 0.2 | | | |
| | 0.1 | 6 | | |
| 21-Aug | 0.3 | | | |
| | 0.8 | | | |
| | 0.1 | | | |
| | 0.3 | | | |
| | 0.1 | | | |
| | 1.5 | | | |
| | 1.2 | | | |
| | 0.3 | | | |
| | 1 | 5.6 | | |
| 22-Aug | 3.5 | | | |
| | 4.9 | 8.4 | | $7,500 |
| 23-Aug | 1.2 | | | |
| | 1.3 | | | |
| | 0.7 | | | |
| | 3.5 | 6.7 | | |
| 24-Aug | 1.8 | | | |
| | 0.2 | | | |
| | 0.5 | | | |
| | 1.4 | | | |
| | 1.6 | | | |
| | 0.3 | | | |
| | 1.3 | | | |
| | 0.7 | | | |
| | 1.3 | | | |
| | 2 | | | |
| | 1.6 | 12.7 | | |
| 25-Aug | 0.9 | | | $11,560 |

*Hours following aborted hearing through commencement of 8/25 hearing:*

*35.4*

*Fees following aborted hearing through commencement of 8/25 hearing:*

*$7,080*

*Continued on next page*

17

| Date | Time entries | Daily total | Total legal fees accrued as of select dates |
|---|---|---|---|
| | 3.4 | | |
| | 0.1 | | |
| | 0.2 | | |
| | 0.1 | 4.7 | |
| 26-Aug | 0.1 | | |
| | 1.2 | 1.3 | |
| 27-Aug | 0.1 | | |
| | 0.6 | | |
| | 0.1 | 0.8 | |
| 28-Aug | 0.1 | 0.1 | $12,760 |
| 2-Sep | 0.2 | 0.2 | |
| 9-Sep | 0.1 | 0.1 | $12,820 |

Fees waived in application were 25.3 hours/$5,060 expended AFTER 9/10

**TOTAL HOURS:** **64.1**