989 P.2d 1111 (1999)
139 Wash.2d 659
Catherine BRAND, Petitioner,
v.
DEPARTMENT OF LABOR AND INDUSTRIES OF the STATE OF WASHINGTON, Respondent.
No. 67319-5.
Supreme Court of Washington, En Banc.
Argued May 27, 1999.
Decided December 16, 1999.
*1112 Bryan P. Harnetiaux, Harbaugh & Bloom, Gary N. Bloom, Delay, Curran, Thompson & Pontarolo, Michael J. Pontarolo, Spokane, Amicus Curiae on Behalf of Washington St. Trial Lawyers Ass'n.
Michael S. Lind, Tacoma, Foster & Associates, Christine A. Foster, Seattle, Charles K. Wiggins, Bainbridge Island, for Petitioner.
Christine Gregoire, Atty. Gen., Martha P. Lantz, Asst. Atty. Gen., Olympia, for Respondent.
MADSEN, J.
Catherine Brand seeks review of a published Court of Appeals decision ordering a reduction and recalculation of the attorney fees awarded to her in a workers' compensation case. Brand argues that an award of attorney fees under RCW 51.52.130 should be calculated without regard to the worker's overall recovery on appeal, and should not exclude fees for work done on unsuccessful claims. We agree, and hold that attorney fees awarded under RCW 51.52.130 should not be limited by the worker's degree of success. However, we agree with the Court of Appeals' conclusion that the trial court failed to make adequate written findings justifying the award of attorney fees in this case. Accordingly, we remand to the trial court to make specific findings regarding the attorney fees award in a manner consistent with this opinion.

FACTS
Catherine Brand injured her left knee in 1978 while working as an assistant manager at the Sherwood Apartments. The Department of Labor and Industries (Department) found her injury to be work related and, accordingly, granted Brand's workers' compensation claim. Over the course of the next few years, Brand underwent seven knee surgeries and received physical therapy. In 1991, the Department closed Brand's claim on the basis that treatment was no longer necessary and there was no additional permanent partial disability.
Ms. Brand then appealed to the Board of Industrial Insurance Appeals (Board). The Board found that, as of 1992, Brand's knee condition was fixed and stable, and she would not benefit from any further curative treatment. The Board affirmed the Department's award for a permanent partial impairment of 30 percent of the value of the left lower leg. In addition to Brand's knee injury, the Board determined that Ms. Brand suffered from a "Category 1"[1] low back strain that was causally related to her knee injury. Clerk's Papers (CP) at 83.
*1113 Ms. Brand appealed the Board's decision to the Superior Court, claiming to be totally disabled and incapable of gainful employment. In the alternative, Brand asserted that the partial disabilities to her knee and back were more severe than the Board and Department had found. Ms. Brand sought $113,583 in pension benefits and/or additional time-loss compensation.
The jury affirmed the Board's finding that Brand was not totally permanently disabled and did not need further treatment for either her knee or back. Additionally, the jury rejected Brand's argument that she was temporarily disabled between May 1987 and October 1990 and between May 1991 and January 1992. However, the jury disagreed with the Board's assessment of the degree of Brand's injury. The jury increased Ms. Brand's partial disability award for her knee from 30 percent to 40 percent and her low back injury from category one to category two.[2] The verdict resulted in a one-time benefit for Ms. Brand in the amount of $3,120.
Ms. Brand's attorneys requested attorney fees under RCW 51.52.130, which provides that the court shall fix a reasonable fees for the services of a worker's attorney if the Board's decision is reversed or modified and additional relief is granted to the worker on appeal. RCW 51.52.130. Tacoma attorney David Vail, Ms. Brand's first attorney who represented Brand before the agency and prepared her case for trial, claimed 42.85 hours at $200 an hour for himself and 17.5 hours at $125 for his associate, for a total of $10,757.50. Christine Foster, Ms. Brand's Seattle attorney who took over the case at trial, requested fees totaling $29,637.[3]
The trial court awarded Brand $25,000 in attorney fees, together with $1,949.09 in taxable costs for legal services performed on all the issues before the court. The court allocated $6,000 to Brand's first attorney, and $19,000 to her second attorney. The trial court did not enter any written findings or conclusions regarding the attorney fees award, but provided this general explanation:
The total fee  and I'm going to split it out and just tell you where I would come out  would be $25,000. And I would allocate 19,000 of that to [Ms. Foster] and 6,000 of that to Mr. Vail, because even though he had time sitting around in the courtroom, he in fact didn't do it, but turned it over to [Ms. Foster]....
Basically what I did  and I'll be honest with you. I tend to round things off. I took your $185 an hour. You had 98.8 and you had 12 and a half, and I just don't think that's all there. I took 100 hours at $185 an hour. I put it at a little more than that. I came to 19,000. And like I said, I rounded it.
On the other side, I went down. I took [Mr. Vail's associate] at less than that, and I also reduced Mr. Vail's, when I did my initial calculation, and I did that kind of arbitrarily. I did not put his full hours in. But in any event, the hours would not have been more than $185 an hour. It would not have been more for him than any of the prevailing trial attorneys.
Within the parameters of that, using his numbers, I put arbitrarily $100 an hour for [Mr. Vail's associate] and I came out to a little over 10,000. I, frankly, reduced those, because of all the stand-around time that was not productive time.
Verbatim Report of Proceedings (RP) (June 21, 1996) at 17-19.
When asked by the Department whether Ms. Brand could recover attorney fees for all issues, including those on which she failed to prevail, the trial court responded: "On all issues, yes. I don't think that they have to win on all of them to do it." RP (June 21, 1996) at 19. The Department appealed the award of attorney fees.
*1114 The Court of Appeals reversed and remanded the case for a recalculation of the attorney fees award. Brand v. Department of Labor & Indus., 91 Wash.App. 280, 959 P.2d 133 (1998). According to the Court of Appeals, the trial court's explanation of the basis for the attorney fees award was inadequate and failed to contain detailed findings about the hourly rate and total hours for each attorney. Id. at 293, 959 P.2d 133. On remand, the Court of Appeals directed the trial court to consider Brand's "very limited success at trial," and to segregate costs and fees attributable to Brand's successful claims from those costs and fees attributable to Brand's unsuccessful claims. Id. at 294, 297, 959 P.2d 133. The court concluded that any award of attorney fees for the unsuccessful claims should be supported by reasons included in the trial court's written findings. Id. at 297, 959 P.2d 133. Brand petitioned for review.

Analysis
This court reviews the reasonableness of attorney fees awards under an abuse of discretion standard. Progressive Animal Welfare Soc'y v. University of Wash., 114 Wash.2d 677, 688-89, 790 P.2d 604 (1990). "A trial court does not abuse its discretion unless the exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons." Id. This court has overturned attorney fees awards when it has disapproved of the basis or method used by the trial court, or when the record fails to state a basis supporting the award. Id. (citing Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 65, 738 P.2d 665 (1987)).
The trial court in this case awarded $25,000 in attorney fees to Brand under RCW 51.52.130. The relevant portion of RCW 51.52.130 provides:
If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary ... a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.
While RCW 51.52.130 does not distinguish between successful and unsuccessful claims brought on appeal, the statute also does not specify how the amount of attorney fees should be determined. Further, the statute does not address the situation at issue here, where the Board's decision was only partially reversed on appeal.
This court has previously applied the lodestar method when the fee shifting statute at issue fails to indicate how the attorney fees award should be calculated. Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 675 P.2d 193 (1983). A court arrives at the lodestar award by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter. Scott Fetzer Co. v. Weeks, 122 Wash.2d 141, 149-50, 859 P.2d 1210 (1993). The lodestar amount may be adjusted to account for subjective factors such as the level of skill required by the litigation, the amount of potential recovery, time limitations imposed by the litigation, the attorney's reputation, and the undesirability of the case. Bowers, 100 Wash.2d at 597, 675 P.2d 193. See also Rules of Professional Conduct (RPC) 1.5(a).
The amount of recovery may be a relevant consideration in determining the reasonableness of a fee award, but is not conclusive. Mahler v. Szucs, 135 Wash.2d 398, 433, 957 P.2d 632, 966 P.2d 305 (1998); Travis v. Washington Horse Breeders Ass'n Inc., 111 Wash.2d 396, 409-10, 759 P.2d 418 (1988). "We will not overturn a large attorney fee award in civil litigation merely because the amount at stake in the case is small." Mahler, 135 Wash.2d at 433, 957 P.2d 632. In the context of workers' compensation, this court has approved a $300 award of attorney fees in a case in which the worker recovered only $1,092, noting that, "[i]n these cases, the amount of recovery is but little, if any, guide." Rehberger v. Department of Labor & Indus., 154 Wash. 659, 662, 283 P. 185 (1929).
Central to the calculation of an attorney fees award, however, is the underlying purpose of the statute authorizing the attorney fees. This court has recognized that specific statutes authorizing the award of attorney fees may be designed to serve *1115 purposes other than the general purpose of most fee shifting statutes: to punish frivolous litigation and encourage meritorious litigation. Scott Fetzer Co., 122 Wash.2d at 149, 859 P.2d 1210. For example, in Scott Fetzer, this court recognized that the attorney fees provision of the long-arm statute served the purpose of compensating out-of-state defendants for their reasonable efforts while encouraging the exercise of state jurisdiction. Id. Given that attorney fees statutes may serve different purposes, it is important to evaluate the purpose of the specific attorney fees provision and to apply the statute in accordance with that purpose.
The purpose behind the award of attorney fees in workers' compensation cases is to ensure adequate representation for injured workers who were denied justice by the Department:
The very purpose of allowing an attorney's fee in industrial accident cases primarily was designed to guarantee the injured workman adequate legal representation in presenting his claim on appeal without the incurring of legal expense or the diminution of his award if ultimately granted for the purpose of paying his counsel.
Harbor Plywood Corp. v. Department of Labor & Indus., 48 Wash.2d 553, 559, 295 P.2d 310 (1956) (quoting Boeing Aircraft Co. v. Department of Labor & Indus., 26 Wash.2d 51, 173 P.2d 164, 167 (1946)); Rehberger, 154 Wash. at 662, 283 P. 185. The Legislature amended RCW 51.52.130 to strengthen the purpose of providing representation for injured workers by allowing attorney fees awards at the appellate court as well as the superior court, and allowing fees when the worker successfully defends against the Board's appeal. Laws of 1993, ch. 122, § 1.[4]
The statutory scheme of the Industrial Insurance Act, Title 51 RCW, as a whole is also instructive. Unlike other statutes, the Industrial Insurance Act is a self-contained system that provides specific procedures and remedies for injured workers. Under the act, the Washington Legislature, recognizing the importance of the worker to the state, created a system to provide swift and certain compensation for workers injured on the job. In exchange for this guaranteed compensation, the injured worker gives up her right to other legal remedies for her injury:
The state of Washington ... declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation ... and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished.
RCW 51.04.010. This "grand compromise," Birklid v. Boeing Co., 127 Wash.2d 853, 859, 904 P.2d 278 (1995), operates as a quid pro quo in which both employers and employees exchange procedural and substantive rights for an ordered system of certain compensation without regard to fault.
Consistent with the legislative intent behind the Industrial Insurance Act, this court has repeatedly emphasized that the Industrial Insurance Act should be given a liberal interpretation. The act "is remedial in nature and is to be liberally applied to achieve its purpose of providing compensation to all covered persons injured in their employment." Sacred Heart Med. Ctr. v. Department of Labor & Indus., 92 Wash.2d 631, 635, 600 P.2d 1015 (1979); Johnson v. Tradewell Stores, Inc., 95 Wash.2d 739, 743, 630 P.2d 441 (1981); Johnson v. Weyerhaeuser Co., 134 Wash.2d 795, 799, 953 P.2d 800 (1998). In considering the calculation of attorney fees under RCW 51.52.130, we should attempt to give effect to the underlying purpose of RCW 51.52.130 specifically, the Industrial Insurance Act as a *1116 whole, and this court's previous interpretations of the act.
We turn now to the Department's specific arguments. The Department concedes that Brand is entitled to attorney fees, but contends that the amount awarded by the trial court was unreasonable. The Department points out that the trial court awarded Brand an additional $3,120 on appeal, but rejected her claim for total disability, which would have entitled her to a pension worth $113,583. The Department argues that the amount of attorney fees awarded should have been reduced in light of Brand's relatively small overall recovery. The Department also asserts that the trial court erred in awarding Brand attorney fees attributable to work on her unsuccessful claims.
The statute, by its plain language, sets the criteria for a worker to receive attorney fees: the Board's decision must be reversed or modified and additional relief granted to the worker. The worker's success is measured only by the reversal or modification of the Board's decision. Nothing in the language of RCW 51.52.130 suggests that the award of attorney fees is dependent upon the worker's overall success on appeal. Nor is there any evidence that the Legislature intended to limit attorney fees to those attributable to successful claims, or to reduce the award when the worker receives little overall financial relief.
In contrast to RCW 51.52.130, which contains no express limitation on the award of reasonable attorney fees for workers who prevail on appeal before the superior court, other sections of the Industrial Insurance Act specifically limit attorney fee awards. For example, RCW 51.52.120(1) limits attorney fees awarded for a worker who prevails before the Department to "thirty percent of the increase in the award secured by the attorney's services." Similarly, RCW 51.52.120(2) discusses the award of attorney fees for workers who prevail before the Board, and directs the Board to fix the amount, taking into consideration the fees allowed for services before the Department. In contrast, the Legislature placed no specific limit on the award of attorney fees for work done before the superior or appellate courts. RCW 51.52.130. Instead, the award is left to the discretion of the court.[5] Where the Legislature has expressly limited fees available at one phase of the proceedings, it is unlikely that the Legislature intended to limit fees awards at the other phases without expressly enumerating those limitations. This is in keeping with "the judicial doctrine expressio unius est exclusio alterius: the expression of one is the exclusion of the other." Landmark Dev., Inc. v. City of Roy, 138 Wash.2d 561, 571, 980 P.2d 1234 (1999).
In light of the plain language of RCW 51.52.130, we hold that reducing attorney fees awards to account for a worker's limited success is inappropriate in this context. Under the statute, the worker's degree of overall recovery is inconsequential. This holding is consistent with the purposes behind RCW 51.52.130. Awarding full attorney fees to workers who succeed on appeal before the superior or appellate court will ensure adequate representation for injured workers.
Awarding attorney fees under RCW 51.52.130 without regard to the worker's degree of success is also appropriate in light of the general purpose of the Industrial Insurance Actproviding workers compensation for their injuries. As Brand points out, compensation under the Industrial Insurance Act is already reduced. Workers' compensation benefits are based on a statutory schedule, rather than on the worker's actual losses. RCW 51.32. Since its inception, this court has recognized that the Industrial Insurance Act offers relatively limited compensation to injured workers:
The Industrial Insurance Act is not one designed to award full compensation to each individual for all such damages as such individual would be entitled to in his peculiar circumstances, but is only a system of limited insurance whereby all industrial employees within the statute are paid definite but limited amounts for injuries without regard, as we have said, to the particular individual circumstances or needs of the injured employee. *1117 Foster v. Industrial Ins. Comm'n, 107 Wash. 400, 402, 181 P. 912 (1919). See also Diesso v. Department of Labor & Indus., 36 Wash.2d 58, 62, 216 P.2d 752 (1950).
Commentators have noted that limiting the amount of attorney fees awarded in workers compensation cases is inconsistent with the general purpose of the workers' compensation system. Obligating successful workers to cover their legal costs reduces the worker's already limited recovery. As noted in Larson's Workers' Compensation Law:
When, however, this practice [of obligating the worker to cover her own legal costs] is superimposed upon a closely calculated system of wage-loss benefits, a serious question arises whether the social objectives of the legislation may to some extent be thwarted. The benefit scales are so tailored as to cover only the minimum support of the claimant during disability. There is nothing to indicate that the framers of the benefit rates included any padding to take care of legal and other expenses incurred in obtaining the award.
8 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 83.11 (1999). Because reducing a worker's award of attorney fees based on the worker's degree of success is inconsistent with the purposes behind RCW 51.52.130 and the Industrial Insurance Act as a whole. We conclude that the worker's degree of overall recovery is not a relevant factor in calculating the attorney fees award.
We also reject the Department's suggestion that the award of attorney fees should have been limited to those fees attributable to Brand's successful claims. Relying on Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Department argues that because Brand's claims were separate and unrelated, she is entitled to fees on only her successful claims. The Court of Appeals agreed and specifically directed the trial court to segregate the costs and fees awarded according to Brand's success or lack of success on each claim. Brand, 91 Wash.App. at 297, 959 P.2d 133.
Hensley was a federal civil rights action brought on behalf of persons involuntarily confined in a state hospital. The plaintiffs were successful on one of their three claims, and requested attorney fees as the "prevailing party" under 42 U.S.C. § 1988. In Hensley, the United States Supreme Court held that the extent of the plaintiffs' success was a "crucial factor" in determining the amount of an attorney fees award. Hensley, 461 U.S. at 440, 103 S.Ct. 1933. The Court concluded that when a plaintiff failed to prevail on all claims, attorney fees attributable to any unrelated unsuccessful claims could be excluded from the total fee award. Id. at 435, 103 S.Ct. 1933. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." Id. at 440, 103 S.Ct. 1933.
This court has followed Hensley and recognized that an award of attorney fees may be limited to fees attributable to successful claims if the claims brought are unrelated and separable. Kastanis v. Educational Employees Credit Union, 122 Wash.2d 483, 859 P.2d 26, 865 P.2d 507 (1994); Nordstrom, Inc. v. Tampourlos, 107 Wash.2d 735, 733 P.2d 208 (1987). In contrast, when parties prevail on any significant issue that is inseparable from issues on which the parties did not prevail, a court may award attorney fees on all issues. Blair v. Washington State Univ., 108 Wash.2d 558, 740 P.2d 1379 (1987).
The Court in Hensley recognized that attorney fees awards need not be reduced in all cases in which the plaintiff fails to succeed on each claim brought:
In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.
Hensley, 461 U.S. at 435, 103 S.Ct. 1933. The Court contrasted cases in which the plaintiffs bring different claims based upon different facts and legal theories from those cases in which the plaintiffs' claims are related *1118 to the extent that counsel's work on the unsuccessful claims can be deemed to have been "expended in pursuit of the ultimate result achieved." Id. at 435, 103 S.Ct. 1933 (quoting Davis v. County of Los Angeles, 8 Empl. Prac. Dec. ¶ 9444, at 5049, 1974 WL 180 (C.D.Cal.1974)).
We conclude that claims brought under the Industrial Insurance Act are different from the discrete, unrelated claims at issue in Hensley. Workers' compensation claims are statutorily based, and deal with one set of facts and related legal issues. The sole issue on appeal before the superior or appellate court in an Industrial Insurance Act case is whether or not the Board adequately assessed the worker's degree of injury. Alternative theories regarding the nature and extent of the worker's injury cannot be said to be unrelated, inseparable claims. An attorney's work on each theory is work "expended in pursuit of the ultimate result achieved." Id. Claims brought in the context of the Industrial Insurance Act are distinguishable from claims brought in the general civil context, which could, as in Hensley, be viewed as a series of discrete claims.
Given the unitary nature of claims brought under the Industrial Insurance Act, we hold that workers' compensation claims are not unrelated, and should not be segregated in terms of successful and unsuccessful claims for the purpose of calculating attorney fees under RCW 51.52.130. This conclusion is in accordance with the purpose of RCW 51.52.130 and the Industrial Insurance Act as a whole.
This is not to say, however, that a worker is entitled to all attorney fees under all circumstances. RCW 51.52.130 requires, by its plain language, the award of attorney fees to be reasonable. Furthermore, our holding that the worker's degree of success does not justify reducing an attorney fees award does not preclude courts from considering other relevant subjective factors in calculating the fee award. Courts may still consider subjective factors such as: the level of skill required by the litigation, the attorney's reputation, the fee customarily charged for such services, the time and labor customarily required, duplicative efforts, and time limitations imposed on the litigation. See generally RPC 1.5(a).
We conclude that the trial court in this case did not err by refusing to reduce Brand's fee award by those attorney fees attributable to her unsuccessful claims. However, the trial court failed to enter written findings or to articulate specific reasons supporting the amount of the attorney fees award. While the trial judge indicated that he was "round[ing] off the attorney fees award, he made no specific findings regarding what factors justified his decision to round the attorney numbers up or down. RP (June 21, 1996) at 18. Without such information, we are unable to determine whether the exercise of the trial court's discretion was "manifestly unreasonable or based upon untenable grounds or reasons." Progressive Animal Welfare Soc'y, 114 Wash.2d at 689, 790 P.2d 604. We are, therefore, unable to judge whether the trial court abused its discretion in calculating Brand's fee award. Accordingly, we remand to the trial court to make specific findings justifying the fee award in this case.
Finally, Brand contends that she is entitled to an award of attorney fees on appeal. Rules of Appellate Procedure (RAP) 18.1(a) provides that a party may recover reasonable attorney fees on review if "applicable law" grants the party the right to recover such fees. However, RCW 51.52.130 does not grant Brand the right to recover attorney fees in this case. The case before this court does not involve an appeal in which the Board's decision is reversed or modified, nor is it a case in which the employer appealed and the worker's right to "relief was sustained on appeal. RCW 51.52.130. Accordingly, Brand's request for attorney fees on appeal is denied.

Conclusion
By the plain language of RCW 51.52.130, a worker who obtains reversal or modification of the Board's decision and additional relief on appeal is entitled to an award of attorney fees. Consistent with the plain language of RCW 51.52.130, its underlying purpose, and the entire Industrial Insurance Act's statutory scheme, attorney fees awards under RCW *1119 51.52.130 should not be reduced in light of the total benefits obtained by the worker nor should the attorney fees be limited to fees generated from the worker's successful claims. While we conclude that the trial court did not err by refusing to reduce Brand's attorney fees award based upon her degree of success, the trial court failed to enter specific findings regarding the basis of its decision. Accordingly, we reverse the Court of Appeals and remand to the trial court to award reasonable attorney fees in a manner consistent with this opinion.
SMITH, JOHNSON, SANDERS, and IRELAND, JJ., concur.
TALMADGE, J. (concurring).
While I concur in the result reached by the majority, I would adopt instead the well-reasoned opinion of the Court of Appeals, Division Two, on the award of reasonable attorney fees under RCW 51.52.130.[1]
RCW 51.52.130 implicates the term of art "reasonable attorney fee."[2] We have indicated in numerous cases that we will employ the lodestar method to calculate an award of reasonable attorney fees; the lodestar method of calculating "reasonable attorney fees" is the default principle for fee calculation in Washington. See, e.g., Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632, 966 P.2d 305 (1998); Scott Fetzer Co. v. Weeks, 122 Wash.2d 141, 859 P.2d 1210 (1993); see, generally, Philip A. Talmadge, Attorney Fees in Washington: Annotated Statutes, Cases and Commentary at 293-97 (Charles P. Siner & Cutler and Nylander eds., rev. ed. 1995).
The policy benefits of employing the lodestar method, as discussed by the Court of Appeals, are apparent. This method, when coupled with trial court findings of fact and conclusions of law in fee decisions, is a way of ensuring the trial courts "show their work." A court arrives at a lodestar award by multiplying a reasonable hourly rate for the prevailing party by the number of hours reasonably expended in the litigation. See Scott Fetzer, 122 Wash.2d at 149-50, 859 P.2d 1210. After the lodestar has been calculated, the court can adjust the figure, as necessary, to reflect factors not already taken into account in computing the lodestar. See Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 593-94, 598, 675 P.2d 193 (1983). Moreover, since the trial court must limit the lodestar to hours reasonably expended, it excludes hours spent on "unsuccessful claims, duplicated effort, or otherwise unproductive time." Bowers, 100 Wash.2d at 597, 675 P.2d 193. However, this method also permits a party to recover fees incurred for unsuccessful claims if the issues are so intertwinedboth the successful and the unsuccessfulthat they cannot be easily parsed. Similarly, a party may seek a multiplier under the lodestar methodology if unusual work is accomplished or if counsel has taken on a case to the exclusion of other work in the office. See RPC 1.5(a); see Allard v. First Interstate Bank, 112 Wash.2d 145, 149, 768 P.2d 998, 773 P.2d 420 (1989).
By contrast, in failing to adopt a particular method of calculating fees, the majority offers *1120 no discernible means of determining how a reasonable fee is present in a particular industrial insurance case. We are in the business of establishing rules in our case law to govern human behavior and to guide the operation of our court system. In the absence of a clear rule by which a trial court can calculate an award of a reasonable fee, and by which we can review it, we do a disservice to the public, the trial courts and the Bar of the State of Washington.
In the present case, the trial court failed to establish an adequate record upon which to review its fee award; in addition, it did not enter findings of fact and conclusions of law. Thus, we do not know which particular factors, if any, the trial court considered in support of its reduced fee award. Additionally, we cannot determine if the trial court thought the attorneys' requested hourly rates were reasonable. Neither do we know if the hours incurred by both sets of attorneys for the claim in this case were necessary to the outcome achieved, nor do we know the reason the trial court declined to award Brand's counsel a multiplier.
In sum, the majority was correct in determining the trial court's decision on attorney fees should be reversed. Nonetheless, I would adopt the clear and well-reasoned approach of the Court of Appeals for the calculation of reasonable attorney fees.
GUY, C.J., and ALEXANDER, J., concur.
NOTES
[1] WAC 296-20-280 defines eight categories of permanent dorsolumbar and lumbrosacral impairments. A category one impairment is described as "No objective clinical findings. Subjective complaints and/or sensory losses may be present or absent." WAC 296-20-280(1).
[2] A category two impairment is described as "[m]ild low back impairment, with mild intermittent objective clinical findings of such impairment but no significant x-ray findings and no significant objective motor loss. Subjective complaints and/or sensory losses may be present." WAC 296-20-280(2).
[3] Ms. Foster's amount was based upon 98.8 hours at $185 per hour, applying a lodestar of 1.5 because of the significant risk posed by the case. Foster also requested fees for the additional 14.5 hours spent preparing the judgment and the memorandum in support of attorney fees.
[4] At its inception, the fee-shifting statute in the Industrial Insurance Act provided that fees were available to either the injured worker or the employer. See Laws of 1911, ch. 74, § 20; Laws of 1931, ch. 90, § 1. In 1951, the Legislature limited the award of attorney fees to make them available only to the injured workers. Laws of 1951, ch. 225, § 17 (codified as RCW 51.52.130).
[5] The court may even award fees for the attorney services before the Department and the Board if the court determines that the fee fixed by the director or the Board for these services was inadequate. RCW 51.52.130.
[1] RCW 51.52.130 states, in pertinent part: "If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified ..., a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court." (Emphasis added.)

RCW 51.52.130 is a fee shifting provision, which allows recovery of fees only in court. See Flanigan v. Department of Labor & Indus., 123 Wash.2d 418, 421, 869 P.2d 14 (1994). Thus, a successful claimant may not recover attorney fees before the Department of Labor & Industries (Department) or the Board of Industrial Insurance Appeals (Board), where the overwhelming majority of claims for industrial insurance are resolved. Contrary to the argument advanced by claimant Brand, RCW 51.52.130 is not merely designed to guarantee counsel to injured workers. Rather, as part of the Industrial Insurance Act, the overall purpose of RCW 51.52.130 is to encourage the finality of matters decided at the Department and Board level in favor of the injured worker by providing for a shifting of costs in favor of the injured worker at the trial court level. See Tallerday v. Delong, 68 Wash.App. 351, 356, 842 P.2d 1023 (1993) (goal of Industrial Insurance Act is to provide "sure and certain" relief, not to award full tort damages). If the statute were designed to generally guarantee counsel to injured workers, the statutory scheme would provide counsel at the Department and Board level where the vast majority of industrial insurance matters are actually resolved.
[2] See Philip A. Talmadge, The Award of Attorneys' Fees in Civil Litigation in Washington, 16 GONZ. L.REV. 57, 77 (1980) (Appendix listing statutes providing for award of reasonable attorney fees).