IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GRANDVIEW SCHOOL DISTRICT NO. 200, | ) ) ) | No. 32413-3-III |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| MARIA SANCHEZ and JOSE GARCIA, | ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) | |

BROWN, J. — Grandview School District (District) appeals the $475,082.51 in attorney fees and costs awarded to Maria Sanchez and her son, Jose Garcia, by the Yakima County Superior Court under the Individuals with Disabilities Education Act (IDEA). The District contends (1) the attorney fee request was prejudicially late and (2) the award was unreasonable and contrary to law. We disagree with the District's first contention and partly agree with its second contention. Accordingly, we affirm in part and reverse in part.

FACTS

On behalf of her son, Ms. Sanchez filed a due process hearing request pursuant to the IDEA with the Office of Superintendent of Public Instruction (OSPI) on January 15, 2010, that was forwarded for assignment to an administrative law judge (ALJ).

Throughout the 2010 administrative hearing, the ALJ heard 19 days of testimony from the parties and admitted several hundred pages of documents. In October 2010, the ALJ determined the District failed to provide Mr. Garcia a free appropriate public education (FAPE) and ordered the District to pay for a six year compensatory education plan designed by Mr. Garcia's experts.

In January 2011, the District sought judicial review of the administrative order in the Yakima County Superior Court.[1] In July 2011, Ms. Sanchez successfully filed a state citizen's complaint with OSPI requesting the District's special education funding be withheld until it complied with the administrative order. The District complied with the order prior to OSPI's September 2011 deadline. Mr. Garcia began receiving compensatory education in November 2011.

Meanwhile, the superior court commenced judicial review. On August 30, 2013, the court substantially upheld the ALJ's decision in an order allowing for reasonable attorney fees and costs. On December 27, 2013, Ms. Sanchez and Mr. Garcia moved for a hearing to determine attorney fees and costs. The hearing was held February 14, 2014. Before issuing its fee order, the court addressed 14 concerns articulated by the District. The court awarded $292,766.05 to attorney Kerri Feeney and $182,316.46 to attorney Artis Grant in attorney fees and costs. Following denial of the District's motion for reconsideration, the District appealed.

---

[1] A federal district court case seeking enforcement has been stayed pending the outcome of this appeal.

ANALYSIS

A. Timeliness and Prejudice

The issue is whether the trial court erred in considering Ms. Sanchez' and Mr. Garcia's motion for attorney fees filed more than 10 days after the entry of judgment without a showing of excusable neglect. Arguing untimeliness and prejudice, the District contends the court lacked legal authority to award fees and costs. Our review is de novo. *O'Neill v. City of Shoreline*, 183 Wn. App. 15, 21, 332 P.3d 1099 (2014).

CR 54(d)(2) requires a party seeking attorney fees and costs to file a claim by motion "no later than 10 days after entry of judgment." CR (6)(b) provides procedures for enlarging the time specified in this rule. The deadline in CR 54(d)(2) was suggested in part by appellate judges "to prevent parties from raising trial-level attorney fee issues very late in the appellate process." 4 KARL B. TIEGLAND, WASHINGTON PRACTICE: RULES PRACTICE: CIVIL CR 54, at 333 (4th ed. 2013) (quoting Drafters' Comment, 2007 Amendments).

In support of its untimeliness argument, the District relies on *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). IPXL moved to strike Amazon's motion for attorney fees as untimely because it was filed 17 days after entry of the judgment in violation of the 14-day deadline set forth in Fed. R. Civ. P. 54(d)(2)(B). *IPXL Holdings*, 430 F.3d at 1384. Amazon made no attempt to claim excuse for breach of the 14-day rule under Fed. R. Civ. P. 6(b). *IPXL Holdings*, 430 F.3d at 1385. On appeal, the court held the district court abused its discretion in enlarging the applicable

time because the 14-day rule was breached and "Amazon took no steps under Rule 6(b)(2) that could have afforded the district court a basis upon which to exercise discretion to enlarge the 14-day time period." *Id.* at 1386.

We note unlike in *IPXL Holdings*, the District never objected to the late filing. Ms. Sanchez and Mr. Garcia did not mislead the District in believing the court's August 30, 2013 order was a final judgment. The District never objected on the basis of CR 54(d)(2), and Ms. Sanchez and Mr. Garcia were not given an opportunity to argue excusable neglect. In this sense, the District waived its objection. Even were we to review the District's argument, *IPXL Holdings* is based on the federal rule. The District sought judicial review in a Washington state court where Washington state court rules apply. We need not look to the federal rules for guidance when adequate state authority exists. *See Lietz v. Hansen Law Offices, PSC*, 166 Wn. App. 571, 580, 271 P.3d 899 (2012). A Washington case interprets the interplay between CR 54(d)(2) and CR 6(b).

In *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 664-65, 709 P.2d 774 (1985), the Washington Supreme Court, in regards to a claimed untimely motion in limine, stated "that CR 6(d) is not jurisdictional, and that reversal for failure to comply requires a showing of prejudice." Prejudice is established by showing "a lack of actual notice, a lack of time to prepare for the motion, and no opportunity to provide countervailing oral argument and submit case authority." *Zimny v. Lovric*, 59 Wn. App. 737, 740, 801 P.2d 259 (1990). Extending *Goucher* to the time requirements of CR 54(d)(2), Division One

4

of this court stated, "The identification in CR 6(b) of specific time requirements in rules that cannot be enlarged strongly supports the conclusion that *Goucher* applies to the other time requirements of the civil rules." *O'Neill*, 183 Wn. App. at 23.

The District cannot show prejudice because it knew of Ms. Sanchez' and Mr. Garcia's intent to pursue attorney fees and costs on December 27, 2013. The District received the last supporting documents for the motion at the end of January 2014 and had two weeks to prepare for the motion. The District's attorney reviewed all of the invoices and supporting declarations before the fee hearing. Thus, the District had a fair opportunity to argue before the trial court. Finally, the District moved to reconsider and, with the court's leave, the District included objections not heard at the hearing.

### B. Reasonableness of Attorney Fees and Costs

The issue is whether the trial court erred in awarding $475,082.51 for attorney fees and costs to respondents. The District's five contentions are discussed below.

The IDEA, 20 U.S.C. §§ 1400-1482, was first adopted to remedy deficiencies in the educational opportunities afforded to students with disabilities. 20 U.S.C. § 1400(c). The IDEA offers funding to states in exchange for the provision of special education services in compliance with the statute's provisions. *Honig v. Doe*, 484 U.S. 305, 309-11, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988) (discussing the IDEA's predecessor statute); *see also* 20 U.S.C. § 1416(b).

The primary purpose of the IDEA is to ensure every child with a disability, who is therefore eligible for special education services under the IDEA, receives a FAPE. 20

5

U.S.C. § 1400(d)(1)(A). The IDEA creates procedural safeguards to insure resolution of substantive disagreements concerning special education services. *See generally* 20 U.S.C. § 1415. The IDEA's procedural safeguards can be divided into categories including informed parental consent, parental notice, parent participation in the individual education program, mediation, litigation in both an administrative setting and in a court setting, state complaints, and independent educational evaluations (IEEs). 20 U.S.C. § 1415(a)-(b). Mediation and litigation are the two mechanisms contained in the IDEA that can be used by individuals to challenge the decisions and actions of school districts. 20 U.S.C. § 1415(e)-(f). IDEA litigation typically begins with an administrative due process hearing. *See* 20 U.S.C. § 1415(f).

"Distinct from the IDEA's due process requirements, the U.S. Department of Education promulgated regulations pursuant to its general rulemaking authority requiring each recipient of federal funds, including funds provided through the IDEA, to put in place a complaint resolution procedure." *Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1067 (9th Cir. 2002); *see also* 34 C.F.R. §§ 300.151-153. Such procedures are "designed to provide parents and school districts with mechanisms that allow them to resolve differences without resort to more costly and litigious resolution through due process." *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1028 (9th Cir. 2000) (internal quotation marks omitted). These procedures allow students, parents, and organizations to file complaints with the state educational agency when a "public agency has violated the IDEA." *Id.* at 1029. Washington's

6

citizen complaint procedures are outlined in WAC 392-172A-05025 through WAC 392-172A-05045; Washington has adopted a one-tiered hearing system with appeals from the administrative hearing filed directly with a federal district or state superior court. WAC 392-172A-05115(1).

In any action or proceeding brought under the procedural safeguard provisions of the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs." 20 U.S.C. § 1415(i)(3)(B). We will uphold an attorney fee award unless we find the trial court manifestly abused its discretion. *Aguire v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006); *Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 665, 989 P.2d 1111 (1999). "A trial court does not abuse its discretion unless the exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Brand*, 139 Wn.2d at 665 (internal quotation marks omitted). The fee applicant bears the burden of demonstrating a fee is reasonable. *Berryman v. Metcalf*, 177 Wn. App. 644, 657, 312 P.3d 745 (2013). "Courts must take an active role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought. Courts should not simply accept unquestioningly fee affidavits from counsel." *Id.*

The lodestar method is the starting point to determining reasonable attorney fees. *McGreevy v. Or. Mut. Ins. Co.*, 90 Wn. App. 283, 291, 951 P.2d 798 (1988), *overruled on other grounds by Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 26 P.3d 910 (2001). "A lodestar award is arrived at by

multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter." *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 149, 859 P.2d 1210 (1993).

First, the District contends the court erred by failing to meaningfully address the District's fee objections. The District identifies a litany of concerns its counsel raised in its declaration opposing the motion for attorney fees that the trial court failed to address at the fee hearing. Initially, the District argues the court failed to discuss its overstaffing concerns. The court noted Ms. Feeney explained the reasons she associated with Mr. Grant in her declaration; these reasons included her belief she needed to associate with Mr. Grant so she could provide comparable representation and so he could lend his litigation expertise to the matter. The court heard the District's overstaffing arguments before deciding the matter and noted the District's counsel had associated with other counsel in May 2011 for the judicial review.

The District argues the court failed to address invoice inaccuracies, unnecessary discovery, unnecessary time billed for various tasks, and lack of contemporaneous billing. The two specific inaccuracies identified in the District's declaration were addressed below but neither of the two inaccuracies are argued on appeal. Other concerns raised by the District include general statements in its declaration not backed by factual details or those not raised before the trial court. Regarding the general concerns, the court stated it "[did] not have the resources to pick through four years of time entries." Report of Proceedings at 29. The court did agree the invoices showed some double billing and accordingly reduced the hours by 25 percent. In the end, the

8

trial judge is "in the best position to determine which hours should be included in the lodestar calculation." *Berryman*, 177 Wn. App. at 659 (internal quotation marks omitted). "An explicit hour-by-hour analysis of each lawyer's time sheets is unnecessary as long as the award is made with a consideration of the relevant factors and reasons sufficient for review are given for the amount awarded." *McGreevy*, 90 Wn. App. at 292 (internal quotation marks omitted). The court took an active role in determining the reasonable amount of hours and independently reviewed the records; thus the court cannot be said to have abused its discretion when the District failed to direct the court's attention to its specific concerns.

Finally, the District argues Ms. Feeney and Mr. Grant billed for time spent on unproductive claims. "The court must limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983). Washington courts have recognized an award of attorney fees can be limited to those fees related to successful claims if the unsuccessful claims were unrelated and separable. *Brand*, 139 Wn.2d at 672-73 (recognizing claims involving a common core of facts or based on related legal theories "cannot be viewed as a series of discrete claims"). Ms. Sanchez' and Mr. Garcia's claims were based on a common core of facts. The alternative theories concerning whether the District failed to provide a FAPE to Mr. Garcia cannot be said to be unrelated, inseparable claims in the context of the IDEA. Consistently, the trial court found "the billing entries for the

9

separate components are applicable to the litigation as a whole." Clerk's Papers at 8089 (internal quotation marks omitted).

Second, the District contends the trial court erred when it upwardly adjusted Ms. Feeney's hourly rate from her current billing rate of $200 per hour to $250 per hour. The District argues this produced a windfall expressly prohibited by the IDEA. A court should calculate the reasonable hourly rate "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984); WAC 392-172A-05120(3)(a). When an attorney has an established billing rate for clients, that rate is likely the reasonable rate. *Bowers*, 100 Wn.2d at 597. However, this established billing rate is not conclusively a reasonable fee; other factors, such as the level of skill required by the litigation and the attorney's reputation, may warrant adjustment of that rate. *Id.*

Here, the trial court identified the prevailing rates in the relevant community as between $200-$350 per hour. The District assigns no error to this finding. Ms. Feeney's hourly rate of $250 was in this uncontested range. The court identified a number of factors which resulted in its upward deviation of Ms. Feeney's hourly rate including the time required by this litigation and the scarcity of experienced attorneys in this practice area in eastern Washington. The IDEA specifies no bonus or multiplier may be used in the lodestar calculation, but the court's $50 increase was neither. The court determined Ms. Feeney could have charged more but did not and was thus entitled to a higher hourly rate within the range the court established. *See I.B. v. New*

10

*York City Dep't of Educ.*, 336 F.3d 79, 81 (2d Cir. 2003) (holding the IDEA does not prohibit adjustments for the experience, reputation, and ability of the attorney to the ultimate fee award).

Third, the District contends the trial court erred when it awarded Ms. Sanchez and Mr. Garcia fees and costs related to the citizen complaint filed after the administrative hearing to enforce the administrative order. A circuit split exists regarding whether a complaint filed in accordance with state law is an "action or proceeding brought under" 20 U.S.C. § 1415. *Compare Lucht*, 225 F.3d at 1029 (a complaint that addresses a dispute subject to resolution in a § 1415 due process hearing is "brought under" § 1415) *with Vultaggio ex rel. Vultaggio v. Bd. of Educ.*, 343 F.3d 598, 603 (2d Cir. 2003) (rejecting *Lucht* and holding "the [state complaint] is not a 'proceeding brought under' § 1415"). The Washington Supreme Court "ha[s] never held that an opinion from the Ninth Circuit is more or less persuasive than, for example, the Second, Sixth, Seventh, Eighth, or Tenth Circuits." *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 271 n.4, 111 P.3d 249 (2005).

The *Lucht* court was persuaded a state complaint is brought under § 1415 because the phrase "*any* action or *proceeding*" must signify "that there is more than one type of 'proceeding' in which a district court is authorized to award attorney fees." *Lucht*, 225 F.3d at 1027. On the other hand, the *Vultaggio* court disagreed with the *Lucht* court, finding there are proceedings expressly referenced and set forth in § 1415 other than the due process hearing which provide for an award of attorney fees.

11

*Vultaggio*, 343 F.3d at 602. The *Vultaggio* court stated the *Lucht* court's inference that a state complaint is a proceeding brought under § 1415 for the purpose of an award of attorney fees is "invalid because attorneys' fees are only permitted when the statutory text is explicit." *Id.* at 603 (internal quotation marks omitted).

Although *Lucht* has not been reversed, the IDEA and its regulations were later amended. The official comments of the United States Department of Education on the revised regulations explain that "the awarding of attorneys' fees is not available under the [IDEA] for state complaint resolutions." 71 Fed. Reg. 46,602 (Aug. 14, 2006). Given this clarification, we decide *Vultaggio* is more persuasive and conclude attorney fees for the State complaint should not have been awarded.

Fourth, the District contends the trial court erred when it awarded Ms. Sanchez and Mr. Garcia (1) their expert witness' fees for testifying and (2) costs not authorized by statute. The District relies on *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291, 126 S. Ct. 2455, 165 L. Ed. 2d 526 (2006). The *Arlington* Court considered whether the IDEA authorizes reimbursement of the fees charged by an expert nonlawyer educational consultant as "costs." *Id.* at 294. When concluding prevailing parents are not entitled to recover expert fees in IDEA actions under 20 U.S.C. § 1415(i)(3)(B), the court partly reasoned (1) "costs" is a term of art that generally does not include expert fees, (2) expert fees are not listed among the costs recoverable in the general statute governing taxation of federal court costs, 28 U.S.C. § 1920, (3) the court's interpretation of "nearly identical language" in another statute as

12

not covering expert fees, and (4) "attorneys' fees" were explicitly included in the statute but "expert fees" were not. *Arlington*, 546 U.S. at 297-98, 302-03.

Ms. Sanchez and Mr. Garcia unpersuasively attempt to distinguish *Arlington* by relying on *Meridian Joint School District No. 2 v. D.A.*, 2013 WL 6181820 (D. Idaho 2013), a case turning on 20 U.S.C. § 1415(i)(2)(C)(iii). But *Meridian* is distinguishable because the governing provision here is not 20 U.S.C. § 1415(i)(2)(C)(iii); rather, the trial court here awarded attorney fees pursuant to 20 U.S.C. § 1415(i)(3)(B). Thus, in awarding Ms. Sanchez and Mr. Garcia expert witness fees under the fee-shifting provision of 20 U.S.C. § 1415(i)(3)(B), the trial court erred.

However, while the trial court did award certain costs, such as unspecified copying charges and postage, not authorized by law, the District failed to object to the award of these costs either at the fee hearing or in its motion for reconsideration. *See* 28 U.S.C. § 1920; RCW 4.84.010. Ms. Sanchez and Mr. Garcia had no opportunity to contest the issue. By its actions, the District waived its objection to the imposition of such costs.

Fifth, the District contends compensatory education violates the purpose of the IDEA, and thus the award of attorney fees should be reduced to because Ms. Sanchez and Mr. Garcia unreasonably rejected the District's initial settlement offer.[2] The District

---

[2] The District argues the trial court failed to enter findings and conclusions regarding the applicability of 20 U.S.C. § 1415(i)(3)(D), (F), both discussing limitations on attorney fee awards in certain situations. But the court did (1) make a general 25 percent reduction in hours used in the lodestar calculation, (2) explicitly find the relief Ms. Sanchez and Mr. Garcia received was better than what was seen in the settlement offer, and (3) listen to argument regarding whether the matter was overstaffed.

13

argues awarding Mr. Garcia compensatory education goes against the purpose of the IDEA because (1) Mr. Garcia is not afforded the same procedural protections in guarantee of a FAPE because he becomes responsible for his own education and (2) he loses the right to be educated in the least restrictive environment.

The trial court found the relief Ms. Sanchez and Mr. Garcia ultimately received was better than what the District offered. The District does not assign error to this finding. "A request for attorney fees should not result in a second major litigation" which revisits the merits of the underlying action. *Comm'r Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 163, 110 S. Ct. 2316, 110 L. Ed. 2d 134 (1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). The District's argument on appeal would require us to inquire into the legality of the ultimate relief awarded on the merits of the case. The District lost its right to challenge the relief awarded when it failed to timely challenge the final order; thus, the sole issue before us is attorney fees. In passing we note compensatory education awards have been upheld under the IDEA. *See, e.g., Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (noting compensatory education has been embraced in some form by several circuits).

### C. Appellate Attorney Fees

Ms. Sanchez and Mr. Garcia request reasonable attorney fees pursuant to RAP 18.1. "If [attorney] fees are allowable at trial, the prevailing party may recover fees on appeal as well." *Landberg v. Carlson*, 108 Wn. App. 749, 758, 33 P.3d 406 (2001); *see*

14

No. 32413-3-III
*Grandview Sch. Dist. No. 200 v. Sanchez*

*also Hwang v. McMahill,* 103 Wn. App. 945, 954, 15 P.3d 172 (2000) (stating the party must be the substantially prevailing party). As Ms. Sanchez and Mr. Garcia are the substantially prevailing parties in this appeal, they are entitled to reasonable attorney fees and costs incurred on appeal provided they comply with RAP 18.1.

CONCLUSION

The trial court did not err when considering Ms. Sanchez and Mr. Garcia's motion for attorney fees but did err in awarding expert witness fees and attorney fees related to the State complaint. We affirm the remainder of the award.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Siddoway, C.J.

Korsmo, J.

15